*James S. Bussey* and *George T. Jackson,* for plaintiff.
*Oswell R. Eve,* for defendant.

---

# FIRST NATIONAL BANK OF WAYNESBORO *v.* MEAD *et al.*

Under the facts alleged in the petition there was no error in sustaining a general demurrer thereto.
AUGUST 16, 1916.

Complaint. Before Judge Hammond. Burke superior court. March 20, 1915.

The plaintiff as transferee brought suit upon an open account against Gordon Mead and certain other named children of Thomas Mead, as joint defendants, alleging an indebtedness for fertilizers sold by the Farmers Mercantile Company to Thomas Mead. It was also alleged: The defendants were in possession of three tracts of land, one known as the Smith place, another as the Glisson place, and the third as the Moody place. The title to the land known as the Smith place is in the defendants as the children of Thomas Mead, under and by virtue of a deed from Thomas Mead to his wife and children, executed in 1891. The legal title to the Moody place is in Thomas Mead, "agent," but the beneficial in-

terest is claimed by the defendants. Petitioner is unable to state in whose name the title to the Glisson tract is, but the beneficial interest in it is claimed by the defendants. All of these lands were, until March, 1910, in the possession and under the control of Thomas Mead. "The said lands constitute what was in the nature of an implied trust estate with Thomas Mead as the trustee or representative of the estate." In January, 1910, Thomas Mead bought of the Farmers Mercantile Company certain commercial fertilizers, which were intended for use on the lands above described, and which were used thereon during the year 1910 for the purpose of making the crops. The fertilizers were necessary and suitable for the crops. The use of the fertilizers resulted in the improvement of the estate of the defendants. The Farmers Mercantile Company, in making sale of the fertilizers, had no direct knowledge as to how Thomas Mead held the lands upon which he was engaged in farming, but knew that he was in control of the lands and had the management thereof, and took a bill of sale to certain personal property from Thomas Mead; but "the credit was extended largely on account of the lands above named, which he was in control of." Thomas Mead is insolvent; executions against him were levied upon the fertilizers almost immediately after the sale, and the fertilizers were claimed by the defendants. After they had been sold to Thomas Mead, W. T. Strange, in March, 1910, qualified as the legal guardian of the defendants. He purchased other fertilizers of the value of $93, and the account for them also is sued upon. The defendants received the benefits of these fertilizers both in income and in the improvement of their joint estate, and the purchase of the fertilizers was necessary to enable Strange as guardian to carry on the farming operations for said minors.

A general demurrer to the petition was sustained.

*E. V. Heath,* for plaintiff. *H. J. Fullbright,* for defendants.

BECK, J. (After stating the foregoing facts.) The court properly sustained the demurrer. The facts alleged did not make Thomas Mead the trustee of the defendants or of their property. Certainly he was not vested with any express trust, and no implied trust arises from the facts stated. The fertilizers sold to Thomas Mead were sold to him as an individual; the plaintiff did not know his relation to the title to the lands. The petition concludes

with a prayer for a judgment against the defendants and also a "judgment in rem against the lands described in the petition." The plaintiff is not entitled to either on account of the fertilizers sold to Thomas Mead. Equally unavailing for a personal judgment or a judgment in rem is the account for fertilizers sold to W. T. Strange. "A guardian is not permitted by law to bind the estate of his ward by a contract for the purchase of goods on credit, even though the goods be for the use of the ward and properly classed as necessaries." *Fidelity & Deposit Co.* v. *Rich,* 122 *Ga.* 506 (50 S. E. 338). In the case of *Burke* v. *Mackenzie,* 124 *Ga.* 248 (52 S. E. 653), it was said: "'As a matter of law, guardians of the property of wards are trustees, whose powers over the property of their cestui que trusts are defined by law. Among these powers are not included the execution of a contract binding the estate of his wards.' *Howard* v. *Cassels,* 105 *Ga.* 412 [31 S. E. 562, 17 Am. St. R. 44]. See also *Fidelity Co.* v. *Rich,* [supra]. The general rule is that trustees are not authorized to create any lien upon the trust estate, except such as is authorized by law. Civil Code, § 3186 [3770]. The guardian can not by any contract, except those specially allowed by law, bind his ward's property or create any lien thereon. Civil Code, § 2555 [3074]. It is therefore incumbent upon one seeking to charge the ward's property by a contract of the guardian to show that the claim set up by him is one which the law specially authorized the guardian to contract and bind the ward's property therefor." There is no law authorizing the guardian to contract, under the facts alleged in the petition, for the purchase upon credit of the fertilizers represented by the account sued upon.

*Judgment affirmed. All the Justices concur.*