## STURGIS, guardian, v. DAVIS, trustee.

1. It is the duty of a guardian to maintain and, according to the circumstances, to educate the ward.

(*a*) In so doing the guardian should be allowed all reasonable disbursements and expenses suitable to the circumstances of the orphan committed to his care; but such expenses must not exceed the annual profits of the estate, except by the approval of the ordinary previously granted.

(*b*) One of the modes of giving the ordinary's consent to the expenditure of more than the annual profits of the ward's estate, for the expenses of maintenance and education, is by approving the regular annual returns of the guardian when the returns show on their face that the expenses have exceeded the income.

2. The guardian cannot borrow money and bind his ward therefor; nor can he by any contract, other than those specially allowed by law, bind his ward's property or create any lien thereon.

(*a*) A contract for the improvement of the real estate of the ward by the erection of buildings and improvements thereon is not one which the law authorizes the guardian to enter into and charge the ward's estate therefor.

(*b*) Guardians cannot erect such buildings and improvements with their individual funds and make such expenditures a charge upon the corpus of the estate of their wards, even with the approval of the ordinary.

(*c*) Where a mother, who is the guardian of a minor daughter, erects buildings and other improvements upon the lands of such minor, paying therefor with her individual funds, and makes prompt and regular returns showing such expenditures, which are in excess of the income from the ward's estate, which returns are duly approved by the ordinary and which show an alleged indebtedness in favor of the guardian against the ward, a trustee in bankruptcy of the mother cannot bring an action at law, alleging the above facts, to recover from the guardian, as such, such alleged indebtedness, and charge the estate of the minor with payment thereof.

3. The judgment of the Court of Appeals is reversed.

No. 3934.   JANUARY 18, 1924.

Certiorari; from Court of Appeals.

*M. C. Few,* for plaintiff in error.

*Q. L. Williford* and *E. R. Lambert,* contra.

HINES, J. This case is before this court upon certiorari to review the decision of the Court of Appeals therein. *Davis v. Sturgis,* 30 *Ga. App.* 655 (118 S. E. 700). In addition to the facts stated in the opinion of the Court of Appeals, there are other pertinent facts appearing in the record which should be stated. Attached to the petition of the plaintiff and forming part thereof are the annual returns of the guardian, showing receipts and expenditures for the period of her guardianship, beginning with 1914 and ending with 1922. The following two items appear in the return for 1914: "Stock and farm supplies, $141.48; improvements, $115.55." In the return for 1915 are these items: "Farm supplies, feed stuffs, etc., $495.86; improvement of farm and buildings, $373.69." In the 1916 return are these items: "Farm supplies, improvements, $1211.30; farm supplies, $240." In the guardian's return for 1917 are these items: "Farm improvements, $254.10; farm supplies, $513.48." In the 1918 return are: "Farm improvements, $798.37; piano and lessons, $605.33." In the 1919 return are: "Farm improvements, $1668.91; farm expenses, $506.05." In the 1920 return are: "Farm expenses, $972.90; improvements on farm, $1805.33; furniture, $169.50." In the 1922 return are: "Furniture, $654.35." The guardian's return for the year 1921, if she made one, is not attached to the petition. It will thus be seen that the guardian, during the years, 1914 to 1920, inclusive, expended, exclusive of the charge of $1211.30 in 1916, which is a mixed item of farm supplies and improvements, in farm improvements and buildings the sum of $5015.95. The amounts expended by the guardian in the maintenance and education of the ward during this period were well within the income from the estate of the ward.

1. It is the duty of a guardian to protect and maintain and, according to the circumstances, to educate the ward. Civil Code (1910), § 3058. In doing this every guardian should be allowed all reasonable disbursements and expenses suitable to the circumstances of the orphan committed to his care; but the expenses of maintenance and education must not exceed the annual profits of the estate, except by the approval of the ordinary previously granted. Civil Code (1910), § 3060. This court has held that

the approval of the ordinary may be given after the disbursements and expenses have been made, where the guardian makes prompt and regular returns of his actions, showing such disbursements and expenses in excess of the income from the ward's estate, and the ordinary approves such returns. This court has said: "One of the modes of giving the ordinary's consent to the expenditure of more than the annual profits of the ward's estate, for the expenses of maintenance and education, is by approving the regular annual returns of the guardian when the returns show on their face that the expenses have exceeded the income." *Cook* v. *Rainey,* 61 *Ga.* 452. In *Dowling* v. *Feeley,* 72 *Ga.* 557, this court said: "It seems that where the trustee has acted fairly and properly without the consent of the ordinary previously given, and where prompt and regular annual returns of his actions in that behalf have been made, the ordinary, by his approval of such returns, may ratify the action." While the court in that case was speaking of expenses and disbursements made by a guardian, the question now under discussion was not involved. Similar language was used by this court in *First National Bank* v. *Mead,* 145 *Ga.* 608 (89 S. E. 681), but this exact question was not involved in that case. In speaking of its decisions in which it had held, that, where guardians had expended in the maintenance and education of their wards more than the income from the wards' estates, such expenditures would be allowed, if embraced in prompt and regular returns which had been duly approved by the ordinary, this court, in *Williams* v. *Adams,* 94 *Ga.* 270, 276 (21 S. E. 526), said: "But a careful examination of these cases will show that the money expended by the guardian in each instance was directly disbursed by him for the ward's maintenance and education. In other words, the returns showed unequivocally on their faces that the money of the ward was in fact used by the guardian for these identical purposes. These cases, and others like them, have gone quite far enough in holding that a guardian will be protected in encroaching upon the *corpus* of the ward's estate under these circumstances, and we are not disposed to extend it further." We agree with this statement, and are not disposed to extend this doctrine further. But none of these cases holds that totally unauthorized expenditures by guardians will be allowed them because they are embraced in prompt and regular returns of the guardians, which have been approved by the

ordinary. In those cases guardians were authorized to encroach upon the corpus of the estates of their wards in making expenditures for their maintenance, and such expenditures would be allowed when embraced in prompt and regular returns regularly approved by the ordinary. This is one thing. It is quite a different thing to allow them expenditures made in pursuance of contracts which the law does not authorize them to make, or for a purpose which the law does not authorize.

2. The guardian's power to make contracts, binding upon the estate of the ward, is strictly limited. "The guardian cannot borrow money and bind his ward therefor, nor can he, by any contract other than those specially allowed by law, bind his ward's property, or create any lien thereon." Civil Code (1910), § 3074. "A guardian is not permitted by law to bind the estate of his ward by a contract for the purchase of goods on credit, even though the goods be for the use of the ward and properly classed as necessaries." *Fidelity &c. Co.* v. *Rich,* 122 *Ga.* 506 (50 S. E. 338); *Rich* v. *Fidelity Co.,* 126 *Ga.* 466 (55 S. E. 336). "A contract for the improvement of the real estate of the ward by the erection of buildings thereon is not one which the law authorizes the guardian to enter into and charge the ward's estate therefor." *Burke* v. *Mackenzie,* 124 *Ga.* 248 (52 S. E. 653). In *First National Bank* v. *Mead,* supra, the guardian purchased fertilizers to enable him to carry on the farming operations for his minor wards on their lands, and the wards "received the benefits of these fertilizers, both in income and improvement of their joint estate." This court in that case said: "There is no law authorizing the guardian to contract, under the facts alleged in the petition, for the purchase upon credit of the fertilizers represented by the account sued upon." A guardian cannot make valid and binding contracts for improvements and buildings on lands of his ward, because the law does not specially authorize him to do so. If the law does not allow him to contract for such improvements and buildings with others, by what authority can he himself make them, and charge his ward with the expense of making them?

A guardian, this court has held, cannot buy on credit fertilizers from another for use on the lands of his ward, because the law does not permit him to do so. His contract for the purchase of fertilizers for such purpose cannot be enforced against the estate of the ward, because the law does not allow him to bind the corpus of the

estate by such a contract. In the case of maintaining and educating his ward, the law allows the guardian to encroach upon the corpus of the estate, with either the ante-approval or post-approval of the ordinary of expenditures for these purposes in excess of the income of the estate of the ward. But there is no law allowing the guardian to bind the corpus of the ward's estate for its improvement, with or without the sanction of the ordinary. *Little* v. *West,* 145 *Ga.* 563 (89 S. E. 682). This is the distinction which makes expenditures in the former case allowable, when embraced in prompt and regular returns by the guardian, which are duly approved by the ordinary; and which outlaws and disapproves expenditures in the latter case, although embraced in prompt and regular returns by the guardian, which are approved in due form by the ordinary. "Guardians," when they cultivate the lands of their wards under the Civil Code (1910), § 3069, "may make contracts for labor or service, for the benefit of the estates of their wards, upon such terms as they may deem best, and all such contracts made in good faith shall be a charge upon and bind said estates whenever the same are approved by the ordinary." Civil Code (1910), § 3068. It can be urged with much plausibility, under the ruling in *Cook* v. *Rainey,* supra, that the approval of the ordinary can be had after such contracts have been made; but that question is not now for decision. The above section does not cover contracts made by guardians for improving the lands of their wards. "Contracts for labor or service" means those made for labor or service in cultivating the lands of wards.

We are of the opinion that guardians are without authority to make contracts with third persons for erecting buildings or other improvements on the lands of their wards; and that they are likewise without authority to erect such improvements themselves, and make expenditures therefor charges upon the estates of their wards, even with the approval of the ordinary. *Johnson* v. *Parnell,* 60 *Ga.* 661. Whether, where a mother, who is the guardian of her minor daughter, makes valuable, permanent improvements on the lands of her minor daughter and ward, whereby the value of such lands is enhanced, at a time when the mother is in debt and is insolvent, the creditors of the mother guardian, or her trustee in bankruptcy, can subject the lands of the ward to the payment of such improvements under equitable principles and proper allega-

·tions, is not now for decision. By the common law this could not be done; and the present action is one at law to obtain judgment against the guardian as such on an alleged indebtedness of the ward to her. In *English* v. *English,* 149 *Ga.* 404 (100 S. E. 362), the members of this court, at the date of the rendition of that decision, were evenly split on the question, whether, in an equitable action between guardian and ward, the guardian should be reimbursed from the corpus of the estate for permanent improvements on the ward's property made with his money, without any order of a court of competent jurisdiction.

. For the reasons above stated, we reverse the judgment of the Court of Appeals.

*Judgment reversed. All the Justices concur.*